UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RV KOUNTRY,

    Plaintiff,

v.                                            Case No.: 2:24-cv-0036-JLB-NPM

TRUIST BANK,

    Defendant.
_____/

**ORDER**

Plaintiff RV Kountry sues Defendant Truist Bank for negligence after an unknown individual fraudulently transferred approximately $240,000 out of Plaintiff's bank account. (*See* Doc. 21). Plaintiff also seeks a declaratory judgment relating to its contractual banking agreements with Truist. (*Id.*). Truist filed a motion to dismiss. (Doc. 24). Plaintiff responded in opposition. (Doc. 28). For the reasons stated herein, Truist's motion to dismiss (Doc. 24) is **GRANTED**.

**BACKGROUND**[1]

RV Kountry is a customer of Truist's banking services. (Doc. 21 at ¶ 5). On March 29, 2023 at 4 am, an unknown individual changed the phone number and email associated with RV Kountry's bank account. (*Id.* at ¶ 6). These changes were

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted). Accordingly, this background section relies on the facts recited in the amended Complaint. (*See* Doc. 21).

made from an Internet Protocol ("IP") address in Texas. (*Id.*). RV Kountry maintains its IP address in Florida. (*Id.*). Thereafter, the unknown individual changed RV Kountry's online banking password and its user identification ("user ID"). (*Id.* at ¶ 7). Truist did not send a security alert to notify RV Kountry that its email address, phone number, password, and user ID had been changed. (*Id.*). After changing the password and user ID, the unknown individual initiated seven (7) wire transfers. (*Id.* at ¶ 8). Each wire transfer was for an even dollar amount. (*Id.*). RV Kountry maintains that its wires are always odd dollar figures, including cents, and it does not send more than one or two wires on any given day. (*Id.*).

Truist authorized five (5) out of the seven (7) wire transfers on March 29, 2023. (*Id.* at ¶ 9). The following wire transfers were completed: (1) $50,000 was sent at 7:45 am; (2) $30,000 was sent at 8 am, (3) $90,000 was sent at 8:15 am; (4) $50,000 was sent at 2 pm; and (5) $50,000 was sent at 2 pm. (*Id.*). At 4 pm, RV Kountry received a phone call from Truist's fraud department, inquiring whether RV Kountry had authorized the five (5) wire transfers.[2] (*Id.* at ¶ 10).

RV Kountry now sues Truist for negligence because Truist "fail[ed] to act with reasonable care by, inter alia, failing to send a security alert" advising RV Kountry that its email address, phone number, password, and user ID had been changed in the middle of the night. (*Id.* at ¶ 23). RV Kountry also seeks a

---

[2] The phone call was made to RV Kountry's phone number that had been removed from the account by the unknown individual earlier that day. (*Id.* at ¶ 10).

declaration that its two adhesion contracts[3] with Truist are procedurally and substantively unconscionable. (*Id.* at 3–6).

Noteworthy, RV Kountry originally began banking with SunTrust Bank. (*Id.* at ¶ 12). SunTrust was then acquired by Branch Banking and Trust Company ("BB&T"), which was subsequently acquired by Truist. (*Id.*). RV Kountry's original contract was between it and SunTrust Bank. (*See* Doc. 21-3). The two adhesion contracts were created by virtue of RV Kountry's use of its bank account with Truist. (Doc. 21 at ¶ 13). These two contracts included the Commercial Bank Services Agreement (the "CBSA") and the Online and Mobile Banking for Business Services Agreement (the "OMBBA"). (*Id.*). RV Kountry attached both agreements to its Complaint. (*See* Docs. 21-1, 21-2).

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint also must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state

---

[3] An adhesion contract is defined as a "standardized contract form offered to consumers of goods and services on essentially [a] 'take it or leave it' basis without affording [the] consumer [a] realistic opportunity to bargain and under such conditions that [the] consumer cannot obtain [the] desired product or services except by acquiescing in the form contract." *Addit, LLC v. Hengesbach*, 341 So. 3d 362, 367 (Fla. 2d DCA 2022) (alterations in original).

3

a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Twombly*, 550 U.S. at 555. A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Twombly*, 550 U.S. at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

When considering dismissal, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To warrant dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6), it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. State of Alabama*, 30 F.3d 117, 120 (11th Cir. 1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## DISCUSSION

Truist argues that RV Kountry has failed to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (*See* Doc. 24). Specifically, Truist argues that RV Kountry has failed (1) to plausibly allege that the CBSA or the OMBBA are procedurally or substantively unconscionable, and (2) to state a claim for negligence because (a) a bank has no duty to investigate

transactions under Florida law, (b) the negligence claim is barred by contractual agreements and is precluded by the independent tort doctrine, and (c) the negligence claim is preempted by Article 4 of the Uniform Commercial Code. (*See id.*). Upon review of RV Kountry's operative complaint, the parties' briefing, and the entire record, the Court dismisses the complaint for the reasons set forth below.

## I. RV Kountry has failed to demonstrate procedural or substantive unconscionability.

Unconscionability is a common law doctrine that courts have traditionally invoked to prevent one party from gaining "an unjust and undeserved advantage which it would be inequitable to permit him to enforce." *Steinhardt v. Rudolph*, 422 So. 2d 884, 889 (Fla. 3d DCA 1982) (quoting *Peacock Hotel, Inc. v. Shipman*, 138 So. 2d 44, 46 (Fla. 1931)). When an unjust and undeserved advantage has occurred, a court "will not hesitate to interfere," even though the victimized parties consented to their own demise. *Id.* (quoting *Peacock*, 138 So. 2d at 46). In Florida, an agreement or contractual provision must be both procedurally and substantively unconscionable for the court to intervene. *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157 (Fla. 2014); *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1134 (11th Cir. 2010); *Golden v. Mobil Oil Corp.*, 882 F.2d 490, 493 (11th Cir. 1989). While both procedural and substantive unconscionability must be present, a court applies a sliding scale approach to determine unconscionability. *Basulto*, 141 So. 3d at 1159 (citation omitted). This means that procedural and substantive unconscionability need not be present in the same degree. *Id.* (citation omitted).

Essentially, "a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." *Id.* (citation omitted). Put simply, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (citation omitted).

### A. Procedural Unconscionability.

To determine procedural unconscionability under Florida law, courts review "(1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a 'take-it-or-leave-it' basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract." *Pendergast*, 592 F.3d at 1135 (citations omitted). The central question in the procedural unconscionability analysis is whether "the consumer has an absence of meaningful choice in whether to accept the contract terms." *Id.* (citing *Belcher v. Kier*, 558 So. 2d 1039, 1042 (Fla. 2d DCA 1990).

Here, RV Kountry has failed to plead sufficient facts to demonstrate that the CBSA or the OMBBA are procedurally unconscionable. RV Kountry's lone argument is that both adhesion contracts "are procedurally unconscionable because they were not provided to Plaintiff but rather were referred to in Plaintiff's bank statements." (Doc. 21 at ¶ 14). To that end, RV Kountry asserts that "If Plaintiff

wanted to review the agreements, it had to do so online or ask their local branch for a copy." (*Id.*). However, RV Kountry fails to point to any authority that shows it is entitled to a paper copy of the agreement. Notably, RV Kountry's original contract with SunTrust Bank states, "This agreement is for the benefit of, and may be enforced only by, you and the Bank and their respective **successors** and permitted transferees and assignees. . . ." (Doc. 21-3 at 1 (emphasis added)). The contract provided that "these rules and regulations [in the contract] may be changed from time to time by the Bank with or without notice." (*Id.*). RV Kountry does not dispute that Truist is the successor to SunTrust. And, RV Kountry does not challenge whether Truist can update the rules and regulations as they later did with the CBSA and the OMBBA. In its operative complaint, RV Kountry admits that those two adhesion contracts were referred to in its bank statements. (Doc. 21 at ¶ 14). This shows that RV Kountry was aware of the agreements and where to find them. Had RV Kountry wished to view the agreements, RV Kountry was free to review such agreements online or visit its local branch. Accordingly, RV Kountry has failed to demonstrate that the CBSA or the OMBBA are procedurally unconscionable.

      **B.**    **Substantive Unconscionability.**

Under Florida law, "substantive unconscionability focuses on the terms of the agreement itself and whether the terms of the contract are 'unreasonable and unfair.'" *Pendergast*, 592 F.3d at 1139 (citations omitted). The central question in an unconscionability analysis is whether "those terms of the contract itself which

amount to an outrageous degree of unfairness to the same contracting party." *Id.* (quoting *Steinhardt,* 422 So. 2d at 889). Put another way, courts consider whether the contract terms are so outrageously unfair that it shocks the judicial conscience. *VoiceStream Wireless Corp. v. U.S. Communications, Inc.*, 912 So. 2d 34, 40 (Fla. 4th DCA 2005). Courts also consider whether "no man in his senses and not under delusion would make on one hand, and as no honest and fair man would accept the other." *Pendergast*, 592 F.3d at 1139 (citations and internal quotations omitted). The Court will address the CBSA and OMBBA in turn.

> i. *The CBSA*

RV Kountry alleges in its complaint that the CBSA is substantively unconscionable for two reasons. First, RV Kountry points to the first paragraph of the agreement which states "this [a]greement cannot be changed or modified by you." (Doc. 21 at ¶ 15; Doc. 21-1 at 4). RV Kountry maintains that this unilateral change-in-terms language renders the agreement substantively unconscionable. Second, RV Kountry points to page 13 of the agreement which provides "the [b]ank may rely on **any instructions purportedly made by you**, or on your behalf, to change your contact information without liability. . . . **The bank will have no liability to you for changing your address based on such information, even if such information is in error.**" (Doc. 21 at ¶ 15 (emphasis added); Doc. 21-1 at 13). RV Kountry argues that this language is "buried within a 37-page agreement" and that "one would be hard-pressed to recognize the one-sided nature of the document at first read or the implications of the bolded language" above. (Doc. 21

8

at ¶ 15). Truist argues that a unilateral change-in-terms provision does not make a bank services agreement substantively unconscionable. (Doc. 24 at 9). Further, Truist argues that limitation of liability clauses are not substantively unconscionable. (*Id.* at 10).

As to RV Kountry's first argument—that the unilateral change-in-terms language renders the agreement substantively unconscionable—the Court finds this argument unpersuasive. Notably, RV Kountry fails to point to any reliable authority noting that these clauses are substantively unconscionable. Upon review of the contractual language, the Court finds that this language is neither unreasonable, unfair, nor does it shock the judicial conscience. Accepting the facts in the operative Complaint as true, the Court finds that there is an insufficient basis to conclude that the CBSA is substantively unconscionable as to the change-in-terms provisions.

As to RV Kountry's second argument—that the limitation of liability language was "buried" within the thirty-seven (37) page CBSA—the Court finds this argument also unpersuasive. Florida courts have found that contract clauses that limit liability are "valid and enforceable provided the intention to limit liability is made clear in the contract." *Rosenberg v. Cape Coral Plumbing, Inc.*, 920 So. 2d 61, 64 (Fla. 2d DCA 2005); *Interfirst Fed. Sav. Bank v. Burke*, 672 So. 2d 90, 92 (Fla. 2d DCA 1996); *Eller & Co. v. Galapagos Line, S.A.*, 493 So. 2d 1061, 1062 (Fla. 3d DCA 1986). Here, the Court finds that Truist's intention to limit liability was made clear in the contract. The language within the CBSA provides that "The Bank will

have no liability to you for changing your address based on such information, even if such information is in error." (Doc. 21-1 at 13). There was clearly an error in that RV Kountry's email address and other information was changed by an unidentified third party through fraud. But, while the change was sound in fraud, the Court finds that the intention to limit liability was clear. Upon review of the CBSA, the language was not buried nor hard to find. And, in light of the facts in the operative complaint, the Court finds that the limitation of liability clause does not render the CBSA substantively unconscionable.

      *ii.* *The OMBBA*

RV Kountry next argues that the OMBBA is substantively unconscionable for two reasons. First, RV Kountry states that Truist has a texting program to notify customers "in response to fraud or other suspicious activity on [their] accounts as permitted by applicable law." (Doc. 21 at ¶ 16; Doc. 21-2 at 37–38). RV Kountry argues that "[a] reasonable person would think that Truist would text their customer if a fraudster, or anyone, caused the customer's phone number, email address, user ID, or password [were] changed." (Doc. 21 at ¶ 16; Doc. 28 at 3). RV Kountry takes aim at the fact that Truist did not notify RV Kountry until after the five (5) wire transfers were completed. (Doc. 21 at ¶ 16; Doc. 28 at 3). Thus, they claim that the OMBBA is unconscionable because Truist failed to text RV Kountry when its password and user ID was changed. (Doc. 21 at ¶ 16; Doc. 28 at 3). Second, RV Kountry argues that the OMBBA is substantively unconscionable because it states "to the extent permitted by applicable law, Truist's entire liability

10

and your exclusive remedy for any dispute or claim related to this agreement, the service, any products or services obtained through the use of service, or privacy policy related to the service is your cessation of the use of the service." (Doc. 21 at ¶ 17; Doc. 21-2 at 37–38). The Court finds both arguments unpersuasive. Here, the OMBBA states in all capital letters, "By accessing this service, you agree to waive all claims against Truist and any third party content providers regarding the information provided as part of the service and any information received by you as a result of using the service, and any use by you of such information." (Doc. 21-2 at 37–38 (emphasis removed)). As stated, Florida courts have found that limitation of liability contracts are valid and enforceable where there is an intention to limit liability and such limit is made clear in the contract. *Rosenberg*, 920 So. 2d at 64; *Burke*, 672 So. 2d at 92; *Eller & Co.*, 493 So. 2d at 1062. The limitation of liability clause mentioned above is both valid and enforceable because it was made clear in the contract. This language would certainly cover any claim RV Kountry has against Truist's text notification programs. Accordingly, in light of the facts in the operative complaint, the Court finds that the limitation of liability clause—and Truist's text program—does not render the OMBBA substantively unconscionable.

**II.    RV Kountry has failed to state a claim for negligence.**

Next, Truist argues that RV Kountry has failed to allege a negligence claim because (1) there is no duty—as a matter of law—that Truist must monitor or give notice of fraudulent wire transactions, (2) the claim is barred by contractual agreements and is precluded by the independent tort doctrine, and (3) the claim is

11

preempted by Article 4 of the Uniform Commercial Code. (*See* Doc. 24). RV Kountry argues that (1) Article 4 does not preempt its negligence claim because "[t]he act of sending the wires is not alleged to be negligent" (Doc. 28 at 5) and (2) banks are required to keep their customers' financial information secure (*id.* at 6). The Court finds RV Kountry's negligence claim is due to be dismissed because RV Kountry has failed to allege that Truist had a duty to monitor and give notice of the fraudulent wire transfers.

### A. Duty

To state a negligence claim under Florida law, a plaintiff "must allege four elements: a duty, breach of that duty, causation, and damages." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012). "The duty element of negligence is a threshold legal question; if no legal duty exists, then no action for negligence may lie." *Jenkins v. W.L. Roberts, Inc.*, 851 So. 2d 781, 783 (Fla. 1st DCA 2003). A duty arises from four potential sources: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *McCain v. Florida Power Corp.*, 593 So. 2d 500, 503 n.2 (Fla. 1992) (citation omitted).

RV Kountry correctly admits in its brief that Florida law "imposes no duty on a bank to investigate transactions." (Doc. 28 at 5 (citing *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012)). In *Lawrence*, the plaintiffs sued Bank of America alleging the bank "authorized numerous [fraudulent] deposits,

12

withdrawals, and wire transfers involving large amounts of money" that were "atypical" for the plaintiffs. *Lawrence*, 455 Fed. App'x. at 907. The plaintiffs brought three claims against the bank: (1) common law fraud, (2) conversion, and (3) breach of fiduciary duty. *Id.* at 906. The district court dismissed the case under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 905. Plaintiffs appealed, arguing that the bank had knowledge of the fraudulent behavior and substantially assisted in its operation. *Id.* at 906. The Eleventh Circuit affirmed and reasoned that Florida law does not require banking institutions to investigate transactions. *Id.* at 907 (citing *Home Fed. Sav. & Loan Ass'n of Hollywood v. Emile*, 216 So. 2d 443, 446 (Fla. 1968)). The court explained that, in providing routine banking services, the bank was not required to investigate fraudulent transactions. *Id.*

Here, RV Kountry acknowledges that Florida imposes no duty on a bank to investigate transactions. Rather, RV Kountry argues that "[t]here is no law that says a bank has no duty to protect and secure its customers' private information." (Doc. 28 at 5–6). Additionally, RV Kountry argues that, in fact, "banks are required to maintain their customers' financial information secure." (*Id.* at 6). RV Kountry then cites *Biondi v. Branch Banking & Tr. Co.*, No. 1:18-CV-22521-UU, 2019 WL 13217964 (S.D. Fla. Feb. 7, 2019). (*Id.*). In *Biondi*, the plaintiff noticed eight unauthorized transfers on his bank account totaling approximately $200,000. *Biondi*, 2019 WL 13217964 at *1. The defendant bank never called the plaintiff regarding the account activity even though the improper transfers were over $40,000. *Id.* The plaintiff then sued the defendant bank for negligence arguing

13

that the bank had a duty to safeguard the plaintiff's account from unauthorized access, unauthorized changes to his account, unauthorized transfers, and theft. *Id.* at *3. The plaintiff's account was governed by a bank services agreement. *Id.* at *1. The court dismissed the complaint, stating that the plaintiff failed to establish that the defendant bank owed him a duty of care. *Id.* at *2–3. The court further explained that failure to verify account changes and the bank's failure to follow its own internal procedures to notify the plaintiff did not impose a duty under Florida common law. *Id.* RV Kountry acknowledges that the holding of *Biondi* does not impose a duty to investigate transactions and does not impose a duty to verify unauthorized account changes. (Doc. 28 at 6). RV Kountry's lone opposition to the holding in *Bondi* is that "[r]egrettably, and respectfully, the Biondi opinion is wrong." (*Id.* at 7). But, RV Kountry does not provide any caselaw, set of facts, or language within the *OMBBA* or the *CBSA* that demonstrate why *Lawrence* or *Biondi* are incorrect. A conclusory allegation that the opinions are incorrect, without more, is insufficient for this Court to find that a duty of care was owed to RV Kountry. *See Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1322 (M.D. Fla. 2015) (holding that Florida law does not impose a duty on a bank to investigate transactions). Both the Eleventh Circuit and the Florida Supreme Court agree that Florida law does not impose a duty on a bank to investigate fraudulent transactions. *Lawrence*, 455 Fed. Appx. 904; *Emile*, 216 So. 2d 443; *see also Wiand*, 86 F. Supp. 3d at 1316 (holding that Florida law does not impose a duty on a bank to investigate transactions). Accordingly, the Court finds that RV Kountry has

14

failed to demonstrate a duty of care.[4]  Therefore, RV Kountry's negligence claim cannot proceed.

## CONCLUSION

The Court has carefully reviewed the amended complaint and recognizes RV Kountry's frustration due to the loss of its funds.  The adhesion contract language is clear and undercuts RV Kountry's legal claims here.  RV Kountry has failed to plead facts to constitute either procedural or substantive unconscionability, let alone both.   And, RV Kountry has neglected to demonstrate a duty owed by Truist.  After careful consideration, the Court has determined that RV Kountry can present no set of facts to survive another motion to dismiss.  As such, the Court will not grant leave to amend and will dismiss the amended complaint with prejudice without leave to amend.  *See, e.g., Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1273 (11th Cir. 2023) (affirming district court's dismissal with prejudice under Rule 12(b)(6), where plaintiff failed to demonstrate that the adhesion contract was both procedurally and substantively unconscionable); *see also Semerena v. Dist. Bd. of Trustees of Miami Dade Coll.*, 282 So. 3d 974, 977 (Fla. 3d DCA 2019) (affirming trial court's dismissal with prejudice of negligence claim, where plaintiff failed to plead a duty was owed by defendant).

---

[4] Because the Court has found that RV Kountry has failed to demonstrate a duty of care, the Court need not discuss Truist's final two arguments that the negligence claim (1) is barred by contractual agreements and is precluded by the independent tort doctrine, and (2) the claim is preempted by Article 4 of the Uniform Commercial Code.

For the foregoing reasons, it is **ORDERED** that:

(1) Truist's motion to dismiss (Doc. 24) is due to be **GRANTED**.

(2) Count One is **DISMISSED with prejudice**.

(3) Count Two is **DISMISSED with prejudice**.

(4) The Clerk of Court is **DIRECTED** to enter judgment dismissing the case with prejudice, deny any pending motions as moot, terminate any deadlines, and close the file.

**DONE AND ORDERED** in Fort Myers, Florida, on March 7, 2025.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE